WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

RICHARD WALTER KNIGHT,          )
                                )
                    Plaintiff,  )
                                )
        vs.                     )
                                )
KILOLO KIJAKAZI, Acting Commissioner )
of Social Security,             )
                                )          No. 3:22-cv-0288-HRH
                    Defendant.  )
_____ )

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II

of the Social Security Act, 42 U.S.C. §§ 401–434.  Plaintiff Richard Walter Knight has

timely filed his opening brief[1] to which defendant, Kilolo Kijakazi, has timely responded.[2]

Oral argument was not requested and is not deemed necessary.

Procedural Background

On June 9, 2016, plaintiff filed an application for benefits under Title II, alleging that

he became disabled on May 12, 2015.  Plaintiff alleges that he is disabled due to PTSD, ankle

problems, and hearing loss.  Plaintiff's application was denied initially, and he requested an

_____

[1]Docket No. 11.

[2]Docket No. 13.

administrative hearing. After a hearing on March 28, 2018, an administrative law judge (ALJ) denied plaintiff's application on May 10, 2018. Plaintiff sought review by the Appeals Council, which remanded the matter to the ALJ on October 29, 2019. On May 20, 2020, the ALJ held a second administrative hearing, and on June 3, 2020, the ALJ again denied plaintiff's application. Plaintiff again sought review by the Appeals Council, and on March 12, 2021, the matter was again remanded to the ALJ. On August 2, 2021, the ALJ held a third administrative hearing, after which plaintiff's application was again denied. On October 31, 2022, the Appeals Council denied plaintiff's third request for review, thereby making the ALJ's October 4, 2021, decision the final decision of defendant. On December 30, 2022, plaintiff commenced this action for judicial review of defendant's final decision.

## General Background

Plaintiff was born on November 17, 1961. He was 54 years old on his alleged onset of disability date and 59 years old at the time of the second administrative hearing. Plaintiff has a high school education and some college. Plaintiff's past relevant work includes work as a police officer and a valve tech.

## The ALJ's Decision

The ALJ first found that plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2020."[3]

---

[3]Admin. Rec. at 20.

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

At step one, the ALJ found that plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of May 12, 2015 through his date last insured of December 31, 2020...."[5]

At step two, the ALJ found that "[t]hrough the date last insured, the claimant had the following severe impairments: status post cervical spine fusion; status post carpal tunnel

_____

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 21.

syndrome release; hearing loss; [and] posttraumatic stress disorder...."[6]  The ALJ found plaintiff's pes cavus, dry eyes, and skin lesions nonsevere.[7]

At step three, the ALJ found that "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[8] The ALJ considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 11.14 (peripheral neuropathy), 1.18 (traumatic brain injury), 2.10 (hearing loss not treated with cochlear implantation), and 12.15 (trauma- and stressor-related disorders).[9]  The ALJ considered the "paragraph B" criteria and found that plaintiff had a mild limitation in understanding, remembering or applying information; a moderate limitation in interacting with others; a moderate limitation as to concentration, persistence, or pace; and a moderate limitation as to adapting or managing oneself.[10]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th

---

[6]Admin. Rec. at 21.

[7]Admin. Rec. at 21.

[8]Admin. Rec. at 21.

[9]Admin. Rec. at 21-22.

[10]Admin. Rec. at 22.

Cir. 2009). The ALJ found that

> through the date last insured, the claimant had the residual
> functional capacity to perform medium work as defined in 20
> CFR 404.1567(c) except: he can never climb ladders, ropes, or
> scaffolds; he is limited to frequent right handling and fingering;
> he must avoid moderate exposure to excessive industrial noise;
> he must avoid all exposure to unprotected heights; and he must
> avoid concentrated exposure to hazardous machinery. Work is
> limited to only occasional changes in the work setting with only
> occasional interaction with the public, coworkers, and supervi-
> sors.[11]

The ALJ discounted plaintiff's pain and symptom statements because they were not

consistent with the medical evidence.[12]

The ALJ gave Dr. Merrill's opinion significant weight.[13] The ALJ gave Dr. Lewy's

opinion significant weight.[14] The ALJ gave Dr. Gaeta's opinion significant weight.[15] The

ALJ gave Dr. Lebeau's opinion moderate weight.[16] The ALJ gave Dr. Lace's opinion

moderate weight.[17] The ALJ gave Dr. Valette's opinion moderate weight.[18] And, the ALJ

---

[11]Admin. Rec. at 23.

[12]Admin. Rec. at 24-25.

[13]Admin. Rec. at 26.

[14]Admin. Rec. at 27.

[15]Admin. Rec. at 27.

[16]Admin. Rec. at 28.

[17]Admin. Rec. at 28.

[18]Admin. Rec. at 28.

-5-

gave some weight to the opinions of Dr. Baxendale and Dr. Ozer.[19]

The ALJ gave some weight to plaintiff's 80% VA rating.[20] And, the ALJ gave some weight to the VA's denial of plaintiff's request for vocational retraining as a fishing guide.[21]

The ALJ gave some weight to the lay testimony of Ray Rush, plaintiff's friend.[22]

At step four, the ALJ found that "[t]hrough the date last insured, the claimant was unable to perform any past relevant work...."[23]

At step five, the ALJ found that "[t]hrough the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed[,]" such as a laundry worker.[24]

Thus, the ALJ concluded that plaintiff "was not under a disability, as defined in the Social Security Act, at any time from May 12, 2015, the alleged onset date, through

---

[19]Admin. Rec. at 29. Dr. Baxendale's opinion is discussed below. Dr. Ozer examined plaintiff on May 31, 2016, and opined that plaintiff's reliability and productivity would be reduced due to his PTSD symptoms. Admin. Rec. at 1180.

[20]Admin. Rec. at 29.

[21]Admin. Rec. at 29.

[22]Admin. Rec. at 30. Rush completed a third-party function report on September 8, 2016. Admin. Rec. at 694-702.

[23]Admin. Rec. at 30.

[24]Admin. Rec. at 31.

-6-

December 31, 2020, the date last insured...."[25]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred because she failed to include limitations

---

[25]Admin. Rec. at 32.

related to concentration, persistence, or pace in plaintiff's RFC. At step three, the ALJ found that plaintiff had a moderate limitation as to concentration, persistence or pace.[26] But, plaintiff argues that the ALJ did not include anything in his RFC to account for the pace limitation that she found at step three. Rather, in plaintiff's RFC, in terms of limitations flowing from plaintiff's mental impairments, the ALJ found that plaintiff was "limited to only occasional changes in the work setting with only occasional interaction with the public, coworkers, and supervisors."[27] Thus, plaintiff argues that the RFC was incomplete and the ALJ erred by failing to include any limitations as to concentration, persistence, or pace. See Lubin v. Comm'r of Social Sec. Admin., 507 Fed.Appx. 709, 712 (9th Cir. 2013) ("[a]lthough the ALJ found that Lubin suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination").

Defendant, however, argues that the ALJ did account for plaintiff's moderate limitation as to concentration, persistence, or pace by giving Dr. Lewy's opinion significant weight. On January 11, 2017, Dr. Lewy, a nonexamining source, opined that plaintiff had mild restrictions of daily living activities; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no

---

[26]Admin. Rec. at 22.

[27]Admin. Rec. at 23.

-8-

repeated episodes of decompensation.[28]  Dr. Lewy also opined that plaintiff was not significantly limited in his ability to carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, make simple work-related decisions, ask simple questions or request assistance, accept instructions, respond appropriately to criticism from supervisors, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness; and was moderately limited in his ability to carry out detailed instructions, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.[29]  Finally, Dr. Lewy opined that plaintiff could "complete basic and familiar detailed tasks at a steady pace during workdays and work weeks[,]" that he was "capable of appropriate coworker and supervisor interaction[,]" and that he could "manage routine contacts with the public."[30]

---

[28]Admin. Rec. at 159.

[29]Admin. Rec. at 163-164.

[30]Admin. Rec. at 163-164.

The ALJ gave significant weight[31] to Dr. Lewy's opinion that plaintiff could "complete basic and familiar detailed tasks at a steady pace during workdays and work weeks[,]" that he was "capable of appropriate coworker and supervisor interaction[,]" and that he could "manage routine contacts with the public."[32]  Defendant argues that Dr. Lewy translated his opinion that plaintiff had moderate limitations as to concentration, persistence, or pace into the functional limitation that plaintiff could "complete basic and familiar detailed tasks at a steady pace during workdays and work weeks[.]"[33]  Defendant argues that the ALJ in turn incorporated this limitation in her RFC when she found that "[w]ork is limited to only occasional changes in the work setting with only occasional interaction with the public, coworkers, and supervisors."[34]

Defendant may be correct that Dr. Lewy translated his opinion that plaintiff had moderate limitations as to concentration, persistence, and pace into the functional limitation that plaintiff could "complete basic and familiar detailed tasks at a steady pace during workdays and work weeks[.]"[35]  But, the ALJ then failed to include this limitation in her RFC or explain why she was not including this limitation. The ALJ, having found that plaintiff had

---

[31]Admin. Rec. at 27.

[32]Admin. Rec. at 163-164.

[33]Admin. Rec. at 163.

[34]Admin. Rec. at 23.

[35]Admin. Rec. at 163.

-10-

moderate limitations as to concentration, persistence, or pace and having given significant weight to Dr. Lewy's pace opinion, then failed to include any pace limitations in her RFC. This was error.

Plaintiff has also argued that the ALJ erred in giving Dr. Lewy's opinion significant weight. As set out above, the ALJ gave significant weight to Dr. Lewy's opinion that plaintiff could "complete basic and familiar detailed tasks at a steady pace during workdays and work weeks[,]" that he was "capable of appropriate coworker and supervisor interaction[,]" and that he could "manage routine contacts with the public."[36] The ALJ gave this opinion significant weight because it was

> generally consistent with the longitudinal record to include, for example, the claimant's sometimes anxious presentation but often normal mood and affect; his ability to interact appropriately with providers, who describe him as cooperative and friendly with normal behavior; his generally intact cognition with normal memory and estimated average intelligence; and his appropriate or otherwise unremarkable hygiene and grooming....[37]

Plaintiff interprets the ALJ's explanation as to why she gave Dr. Lewy's opinion significant weight to mean that the ALJ found that his symptoms occurred only sometimes. Based on this interpretation, plaintiff then argues that the ALJ erred because she relied on the fact that his symptoms waxed and waned. As the Ninth Circuit has observed, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such

---

[36]Admin. Rec. at 163-164.

[37]Admin. Rec. at 27.

-11-

circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014). But, plaintiff argues that this is exactly what the ALJ did when she determined that Dr. Lewy's opinion was entitled to significant weight.

The ALJ did not err in giving Dr. Lewy's opinion significant weight. Opinions from non-treating, non-examining sources such as Dr. Lewy can constitute substantial evidence if they are "not contradicted by all other evidence in the record[.]" Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989). The ALJ found that Dr. Lewy's opinion was supported by the other evidence in the record, a finding that plaintiff has not challenged. Instead, plaintiff has offered reasons why he would have given Dr. Lewy's opinion less weight, but the fact that plaintiff might have weighed Dr. Lewy's opinion differently does not mean that the ALJ erred in giving it significant weight.

But having given Dr. Lewy's opinion significant weight, the ALJ should have included all the limitations assessed by Dr. Lewy or explained why she was not including them. Instead, the ALJ did not include Dr. Lewy's pace limitation and provided no legitimate reason for not doing so. The ALJ noted that Dr. Lewy had not examined plaintiff nor had the opportunity to review the complete longitudinal record.[38] But, the ALJ did not

---

[38]Admin. Rec. at 27.

explain how these two facts undermined Dr. Lewy's opinion that plaintiff was limited to work at a steady pace.

The ALJ's concentration, persistence, or pace error was not harmless. An error is harmless if it is "'inconsequential to the ultimate nondisability determination.'" Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)). Had the ALJ included a limitation as to concentration, persistence, or pace in plaintiff's RFC, it is possible that the ALJ would have made a different disability determination.

Plaintiff next argues that the ALJ erred as to Dr. Baxendale's opinion. On October 27, 2017, Dr. Baxendale evaluated plaintiff in connection with plaintiff's application for benefits under the Veterans Administration.[39] Dr. Baxendale made the "following assessments regarding" plaintiff's functional abilities:

a.  follow work rules:  poor
b.  relate to co-workers:  poor
c.  deal with the public:  poor
d.  use judgment:  fair
e.  interact with supervisors:  poor
f.  deal with work stresses:  poor
g.  function independently:  fair
h.  maintain attention and concentration:  poor
i.  understand, remember, and carry out complex job instructions:  poor
j.  understand, remember, and carry out detailed, not complex, job instructions:  poor

_____

[39]Admin. Rec. at 1013.

-13-

k.  understand, remember, and carry out simple job instructions: good
l.  maintain personal appearance:  good
m.  behave in an emotionally stable way:  poor
n.  relate predictably in social conditions:  poor
o.  demonstrate reliability:  fair.[40]

Dr. Baxendale also opined that plaintiff was "totally impaired, socially and occupationally, as a result of his symptoms of service-connected posttraumatic stress disorder and he is therefore unable to obtain or maintain substantially gainful employment since he last worked in May, 2015."[41]

The ALJ gave "some weight" to Dr. Baxendale's opinion that plaintiff was "totally impaired, socially and occupationally, since at least May 11, 2015...."[42] The ALJ discounted this portion of Dr. Baxendale's opinion because Dr. Baxendale "did not have an opportunity to examine the claimant or to review the updated record."[43]  The ALJ also discounted Dr. Baxendale's opinion because it was

> out of proportion to the longitudinal record to include, for example, the claimant's sometimes anxious presentation but often normal mood and affect; his ability to interact appropriately with providers, who describe him as cooperative and friendly with normal behavior; his generally intact cognition with normal memory and estimated average intelligence; and his

---

[40]Admin. Rec. at 1020.

[41]Admin. Rec. at 1020.

[42]Admin. Rec. at 29.

[43]Admin. Rec. at 29.

-14-

appropriate or otherwise unremarkable hygiene and groom-
ing....[44]

"The Social Security Administration ... altered the regulations which govern the
evaluation of medical evidence for claims filed on or after March 27, 2017." Farlow v.
Kijakazi, 53 F.4th 485, 488 n.3 (9th Cir. 2022). But because plaintiff filed his claim for
benefits prior to this change, the old regulations apply. Under those regulations, "[i]f a
treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ
may only reject it by providing specific and legitimate reasons that are supported by
substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). "Also,
when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a
doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings."
Id.

Plaintiff argues that the reasons the ALJ gave for discounting Dr. Baxendale's
opinions were not legitimate. As for the first reason, that Dr. Baxendale did not examine
plaintiff, defendant concedes that "the ALJ mistakenly thought Dr. Baxendale did not
examine [p]laintiff."[45] Thus, the first reason was not legitimate.

The second reason the ALJ gave was that Dr. Baxendale did not have an opportunity
to review the updated record. Plaintiff makes no argument as to this reason, but defendant
argues that it was a legitimate reason to discount Dr. Baxendale's opinion because the

_____

[44]Admin. Rec. at 29.

[45]Defendant's Responsive Brief at 5, Docket No. 13.

updated record showed that plaintiff's mental functioning was largely normal. Defendant points out that plaintiff's mental status exams generally showed normal memory, mood, affect, cognition, intelligence, thought processes, insight, and judgment.[46]

If Dr. Baxendale's not reviewing the updated record was a legitimate reason to discount his opinion, then the ALJ should have discounted Dr. Lewy's opinion as well, rather than giving that opinion significant weight, given that the ALJ also noted that Dr. Lewy did not have an opportunity to review the updated record.[47] The second reason given by the ALJ to discount Dr. Baxendale's opinion was not legitimate.

The third reason given by the ALJ was that Dr. Baxendale's opinion was inconsistent with the medical evidence of record. Plaintiff makes no argument as to this reason, but plaintiff's mental status exams do show that he often had normal mood and affect, normal memory, average intelligence, appropriate hygiene and grooming, and could interact appropriately with his providers. Inconsistency between a physician's opinion and the medical record constitutes a specific and legitimate reason for the ALJ to discount the opinion in question. Tommasetti, 533 F.3d at 1041. Thus, this was a legitimate reason for discounting Dr. Baxendale's opinion that plaintiff was totally impaired socially and occupationally. And, this one reason constitutes substantial evidence supporting the ALJ's decision to discount Dr. Baxendale's opinion because Dr. Baxendale's opinion is very

---

[46]Admin. Rec. at 942, 1271, 1692, 1762, 1767, 1778, 1783, 1788, 1798, 1822-1823, 1827, 1872.

[47]Admin. Rec. at 27.

inconsistent with the medical evidence of record. Thus, the ALJ did not err as to Dr. Baxendale's opinion.

Plaintiff next argues that the ALJ erred as to Dr. Lace's opinions. Dr. Lace testified as a medical expert at the March 28, 2018, administrative hearing. Dr. Lace opined that plaintiff had mild limitations as to understanding, remembering, or applying information; moderate limitations as to interacting with others; moderate limitations as to concentration, persistence or pace; and moderate limitations as to adapting or managing oneself.[48] Dr. Lace also opined that plaintiff "would be limited to occasional contact with coworkers, the general public, as well as supervisors[;] would be limited to routine tasks with very few if any changes in the nature of the tasks, few if any changes in the location of where those tasks are completed[;]" and "would be limited to slow paced tasks with perhaps daily production quotas."[49]

The ALJ gave Dr. Lace's opinions moderate weight, but stated that

> to the extent his opinion is more restrictive than the residual functional capacity[,] it is out of proportion to the longitudinal record to include, for example, the claimant's sometime anxious presentation but often normal mood and affect; his ability to interact appropriately with providers who describe him as cooperative and friendly with normal behavior; his generally intact cognition with normal memory and estimated average

---

[48]Admin. Rec. at 136-137.

[49]Admin. Rec. at 137.

-17-

intelligence; and his appropriate or otherwise unremarkable hygiene and grooming....[50]

Defendant argues that the ALJ was entitled to "translat[e]" Dr. Lace's opinion "into a succinct RFC," Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015), and that this is what the ALJ did. Defendant argues that the ALJ accounted for Dr. Lace's opinion that plaintiff was limited to "slow-paced tasks" in her RFC by finding that plaintiff could have "only occasional changes in the work setting with only occasional interaction with the public, coworkers, and supervisors."[51] In addition, defendant argues that the ALJ properly found that Dr. Lace's opinions were out of proportion to the medical evidence of record. Defendant again points out that plaintiff's mental status exams often showed normal memory, mood, affect, cognition, intelligence, thought process, insight, and judgment.[52] Defendant argues that these normal exam findings undermine Dr. Lace's opinion that plaintiff's mental impairments were so severe that he could only tolerate "slow paced tasks with perhaps daily production quotas."[53]

The ALJ rejected Dr. Lace's opinion that plaintiff would be limited to slow paced tasks, but the reasons she gave for discounting Dr. Lace's opinion do not address the pace

---

[50]Admin. Rec. at 28.

[51]Admin. Rec. at 23.

[52]Admin. Rec. at 942, 1271, 1692, 1762, 1767, 1773, 1778, 1798, 1822-1823, 1827, 1872.

[53]Admin. Rec. at 137.

limitation. The ALJ's discussion of why she was rejecting Dr. Lace's more restrictive limitations centered on plaintiff's mood and affect, his ability to interact with medical providers, his intelligence, and his hygiene. The ALJ's discussion said nothing about Dr. Lace's opinion regarding plaintiff's limitation to slow-paced tasks. Dr. Lace's pace limitation was linked to plaintiff's problems with concentration, persistence, or pace. His mood and affect, ability to interact with medical providers, intelligence, and hygiene have little, if anything, to do with his ability to concentrate, persist, or maintain pace.

Because the ALJ did not adequately explain why she was rejecting Dr. Lace's pace limitation, the ALJ erred. This error was not harmless because had the ALJ included a pace limitation in plaintiff's RFC, it is possible that her disability determination would have been different.

Plaintiff next argues that the ALJ erred as to Dr. Valette's opinion. Dr. Valette testified as a medical expert at the May 15, 2020, administrative hearing. Dr. Valette opined that plaintiff had no limitations as to understanding, remembering or applying information; no limitations in terms of interacting with others; no limitations in terms of concentration, persistence, or pace; and no limitations in terms of adapting or managing oneself.[54] Dr. Valette also opined that plaintiff did not have any functional limitations as a result of his mental impairments.[55]

---

[54]Admin. Rec. at 95-96.

[55]Admin. Rec. at 96.

The ALJ gave Dr. Valette's opinion "moderate weight" because her opinion was

> somewhat consistent with the longitudinal record to include, for example, the claimant's sometime anxious presentation but often normal mood and affect; his ability to interact appropriately with providers who describe him as cooperative and friendly with normal behavior; his generally intact cognition with normal memory and estimated average intelligence; and his appropriate or otherwise unremarkable hygiene and grooming....[56]

The ALJ's treatment of Dr. Valette's opinion makes no sense given that her opinion was completely at odds with the ALJ's RFC. But any error as to Dr. Valette's opinion was harmless because the ALJ assessed greater limitations than Dr. Valette assessed.

Plaintiff next argues that the ALJ erred as to Dr. Merrill's opinion. On January 11, 2017, Dr. Jeffrey Merrill signed off on an opinion that plaintiff could occasionally lift/carry 50 pounds; could frequently lift/carry 25 pounds; could stand/walk for 6 hours; could sit for 6 hours; was unlimited as to climbing ramps/stairs, balancing, kneeling, crouching, and crawling; could never climb ladders/ropes/scaffolds; was unlimited as to reaching and feeling; and was limited to frequent handling and fingering on the right.[57] The ALJ gave significant weight to Dr. Merrill's opinion.[58] Plaintiff questions, however, whether Dr. Merrill actually offered any opinion.

In the record, there is a physical residual functional capacity assessment at pages 160-

---

[56]Admin. Rec. at 28-29.

[57]Admin. Rec. at 161-162.

[58]Admin. Rec. at 26.

-20-

162 which bears Dr. Merrill's signature. But, in the "additional explanation" section immediately preceding Dr. Merrill's signature, he states: "File reviewed and I concur with the above assessment and rationale, which acknowledges clmt's severe impairment from mild high freq hearing losses, moderate CTS R by electrical criteria with benign exam findings, metatarsalagia, [and] pes planus."[59] Plaintiff contends that this raises a question as to whether Dr. Merrill actually completed the assessment or whether he was simply signing off on an assessment done by a "single decision maker" or SDM. "An ALJ may not accord any weight, let alone substantial weight, to the opinion of a non-physician SDM." Morgan v. Colvin, 531 Fed.Appx. 793, 794 (9th Cir. 2013).

However, this case is not similar to Morgan. There, the ALJ gave "substantial weight to the opinion of Wayne S. Rhodes, a non-physician SDM, in determining Morgan's residual functional capacity." Id. "The ALJ mistakenly believed that Mr. Rhodes was a physician, and made four references to him as 'Wayne S. Rhodes, M.D.' or 'Dr. Rhodes' in her written decision." Id. at 795. Although Dr. Hoskins had "affirmed" Mr. Rhodes' opinion, the ALJ did not consider Dr. Hoskins' opinion. Id. The ALJ only considered Mr. Rhodes' opinion. The court found that the ALJ erred in giving significant weight to an opinion by a SDM and that the ALJ, on remand, should consider Dr. Hoskins' opinion, which the court characterized as a single sentence: "This is to affirm that I have noted the data in this file and the assessment of 9/29/05 is affirmed as written." Id. at 794-795. The court found it was for the

---

[59]Admin. Rec. at 162.

ALJ, in the first instance, to determine what weight to give Dr. Hoskins' opinion. Id. at 795.

Here, the ALJ did not incorrectly give significant weight to a medical opinion by a SDM. Rather, the ALJ gave significant weight to Dr. Merrill's opinion that, after reviewing plaintiff's medical file, he agreed with the limitations that had been assessed. The ALJ did exactly what the court directed the ALJ in Morgan to do on remand. Thus, the ALJ did not err in her consideration of Dr. Merrill's opinion.

Next, plaintiff argues that the ALJ erred as to Dr. Gaeta's opinion. Dr. Gaeta, who is board certified in internal medicine and cardiovascular disease, testified as a medical expert at the May 15, 2020, administrative hearing.[60] Dr. Gaeta opined that prior to August 2018, plaintiff had no functional limitations but that after that date, he would be limited to medium work; no ladder or scaffold climbing; could balance, kneel, stoop, and crawl frequently; and should "avoid a job where they require close hearing ability like answering telephones on a frequent basis" or "any jobs where there's ... loud noises...."[61] The ALJ gave Dr. Gaeta's opinion significant weight.[62]

Plaintiff argues that this was error because Dr. Gaeta testified that he was unable to assess some of plaintiff's physical impairments. At the hearing, Dr. Gaeta was asked about plaintiff's foot deformity with a fracture and an assessment by a PA that this would cause

---

[60]Admin. Rec. at 81.

[61]Admin. Rec. at 87-88.

[62]Admin. Rec. at 27.

-22-

problems with prolonged standing.[63] Dr. Gaeta testified that he "would rather get an opinion from someone who is more of an expert in this[,]" such as a podiatrist, "than a physician's assistant that said that."[64] Dr. Gaeta was also asked whether he "assign[ed] any specific limitations on the use of the right upper extremity or the left upper extremity[.]"[65] Dr. Gaeta responded that "I don't think there's evidence in the record for me to answer that question. I don't see any physical findings to address that really."[66] Plaintiff argues that the foregoing testimony calls in to question whether Dr. Gaeta's opinion is supported. Plaintiff contends that the ALJ should have addressed the supportability of Dr. Gaeta's opinion in her decision and her failure to do so was error.

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered[.]" Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). The "'ALJ's duty to develop the record further is triggered ... when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" Ford, 950 F.3d at 1156 (quoting Mayes, 276 F.3d at 459–60). Dr. Gaeta testified that he needed more evidence to assess the limitations flowing from plaintiff's physical impairments. This testimony triggered the ALJ's duty to fully and fairly

---

[63]Admin. Rec. at 90-91.

[64]Admin. Rec. at 91.

[65]Admin. Rec. at 93.

[66]Admin. Rec. at 93.

develop the record, which she did not do.  And, this failure was not harmless because it is possible that the ALJ would have made a different disability determination had the record been adequately developed as to any limitations associated with plaintiff's right hand injury.

Finally, plaintiff argues that the ALJ erred as to Dr. Lebeau's opinion.  Dr. Lebeau testified as a medical expert at the March 28, 2018, administrative hearing.  Dr. Lebeau testified that plaintiff could frequently lift/carry 10 pounds; could occasionally lift/carry 20 pounds; could sit for 6 hours; could stand for 3 hours; could walk for 2 hours; could occasionally reach with the right; could occasionally handle, finger, and feel; could push/pull continuously with the left hand; could continuously use his feet; could climb stairs/ramps occasionally; could not climb ladders/scaffolds; could balance frequently; could stoop, kneel, crouch, and crawl occasionally; could never work around unprotected heights; could work around moving mechanical parts occasionally; could operate a motor vehicle continuously; could be around humidity, dust, odors, fumes, cold, heat and vibration continuously; and could be around loud noise as long as he could wear ear protection.[67]  The ALJ gave Dr. Lebeau's opinion moderate weight.[68]

The limitations that Dr. Lebeau assessed are consistent with light work which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).  But, the ALJ found that plaintiff had

_____

[67]Admin. Rec. at 129-131.

[68]Admin. Rec. at 28.

the residual functional capacity to perform medium work which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). The ALJ explained that she was only giving Dr. Lebeau's opinion moderate weight because it "is out of proportion to the longitudinal record to include, for example, often normal findings on physical examination such as a normal gait, normal neurological findings, and full movement of his extremities; the claimant's generally benign presentation; and evidence that his symptoms improved with surgery...."[69] She also found that the "record does not support postural limitations beyond no climbing of ladders, ropes, or scaffolds or further manipulative reaching limitations as evidence by the claimant often having normal findings such as a normal gait, normal neurological findings, and full movement of []his extremities...."[70]

Defendant argues that the ALJ thus gave a legitimate reason for rejecting Dr. Lebeau's lift and carry opinion. Dr. Lebeau testified that he had limited plaintiff's ability to lift based on plaintiff's right hand injury,[71] and defendant points out that the ALJ expressly referred to the fact that on exam, plaintiff had full strength in his extremities. Defendant argues that this contradicts Dr. Lebeau's opinion as to plaintiff's ability to lift and carry.

But, the ALJ did not reference plaintiff having full <u>strength</u> in his extremities. Rather,

---

[69]Admin. Rec. at 28.

[70]Admin. Rec. at 28.

[71]Admin. Rec. at 130-133.

the ALJ found that the record showed that plaintiff had full <u>movement</u> in his extremities. Having full movement is not necessarily the same as having full strength. Thus, the reason the ALJ gave for discounting Dr. Lebeau's opinion about plaintiff's ability to lift and carry was not legitimate.

In addition, and perhaps more importantly, Dr. Lebeau testified that he did not "know how much power and feeling are left in that hand.... I just don't have enough information."[72] Dr. Lebeau then explained that based on what he saw in the record, he felt that plaintiff was limited to frequently lifting and carrying 10 pounds and occasionally lifting and carrying 20 pounds.[73] As with Dr. Gaeta's testimony, which is discussed above, Dr. Lebeau's testimony triggered the ALJ's duty to fully and fairly develop the record. After Dr. Lebeau testified that he did not have sufficient information, the ALJ should have further developed the record as to the limitations associated with plaintiff's right hand injury. Her failure to do so was harmful error.

Because some of the ALJ's errors were harmful, the court must consider whether to remand this matter for further proceedings or for an award of immediate benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative

_____

[72]Admin. Rec. at 131-133.

[73]Admin. Rec. at 131.

proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. The court follows a three-step analysis to determine whether a remand for benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter, 806 F.3d at 495 (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021).

Plaintiff argues that a remand for an immediate award of benefits would be appropriate if the ALJ erred as to Dr. Lebeau's opinion. Plaintiff argues that there would be no need to further develop the record as to Dr. Lebeau's opinion and that if Dr. Lebeau's light work opinion were credited as true, a finding of disability as of November 17, 2016, the date on which plaintiff turned 55 years old, would be warranted. "The Medical-Vocational Rules direct a finding of disability where a claimant is limited to light or sedentary work, is

-27-

of advanced age (age fifty-five and older), has a high school education or greater, whose past work was skilled or semi-skilled, and does not have transferable skills." <u>Nancy E. L. v. Comm'r Soc. Sec. Admin.</u>, Case No. 6:20-cv-01928-AC, 2022 WL 336842, at *3 (D. Or. Feb. 4, 2022). If Dr. Lebeau's light work opinion is credited as true, plaintiff meets all of the other requirements of Medical-Vocational Rule 202.06 as of November 17, 2016. He has a high school education. His past work as a police officer and a valve tech was skilled work.[74] And, the vocational expert testified that there would not be any transferrable skills from plaintiff's past relevant work to light work.[75]

Although the ALJ erred as to Dr. Lebeau's opinion, a remand for benefits is not appropriate. As discussed above, the record requires further development as to the limitations associated with plaintiff's right hand injury. Further development of the record is also required as to the ALJ's failure to include any limitations in plaintiff's RFC related to concentration, persistence, or pace, and her treatment of Dr. Lace's pace opinion.

Conclusion

Based on the foregoing, the final decision of defendant is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 18th day of September, 2023.

/s/ H. Russel Holland<br>United States District Judge

---

[74]Admin. Rec. at 61.

[75]Admin. Rec. at 68-69.

-28-